The **UNITED STATES** of America for the Use and Benefit of **CLARK–FONTANA PAINT COMPANY**, Inc., Appellant,

v.

**GLASSMAN CONSTRUCTION COMPANY**, Inc., and Home Indemnity Company, Appellees.

No. 11631.

United States Court of Appeals
Fourth Circuit.

Argued Feb. 7, 1968.

Decided May 3, 1968.

Sebert H. Keiffer, Washington, D. C. (Joseph F. Vallario, Jr., Washington, D. C., on the brief) for appellant.

Leonard S. Melrod, Washington, D. C. (Joseph V. Gartlan, Jr., and David S. Goldberg, Washington, D. C., on the brief) for appellees.

Before HAYNSWORTH, Chief Judge, and BRYAN and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

The question, correctly framed by the district judge, is whether a supplier of materials, who has not in fact been fully paid, can recover under the Miller Act, 40 U.S.C. § 270b, the balance due when it has received and endorsed checks from the general contractor that were more than sufficient to cover that balance. We think so and reverse the judgment of the district court entered in favor of the general contractor.

Glassman Construction Company undertook, by written contract with the United States, to build 150 family housing units at Andrews Air Force Base, Maryland. Elmore Decorators then subcontracted with Glassman to perform the painting work on the project for $56,500 and arranged for Clark-Fontana Paint Company, Inc. to supply the necessary paint. To assure itself of payment, Clark-Fontana requested that Glassman agree to make payments on the Elmore subcontract by means of checks payable jointly to Elmore and Clark-Fontana. Glassman and Elmore signed a written agreement to that effect on January 14, 1965; pursuant to the terms of the instrument, entitled "Joint Check Assignment," Glassman issued nine checks between March 15 and July 15, 1965, for a total amount of $30,300. On the reverse side of each check the following legend was stamped in capital letters:

"THE UNDERSIGNED ENDORSER(S), IN CONSIDERATION OF THE ISSUANCE OF THIS CHECK, DO HEREBY WAIVE AND RELEASE TO THE EXTENT OF THE FULL FACE VALUE HEREOF ANY RIGHT ANY OF THEM MAY HAVE TO CLAIM A MECHANIC'S OR MATERIALMEN'S LIEN OR TO ASSERT ANY CLAIM UNDER ANY BOND GIVEN BY THE PAYER HEREOF AS PRINCIPAL, FOR ANY WORK DONE FOR OR MATERIALS FURNISHED TO THE PAYER HEREOF OR ANY OTHER PAYEE OR PAYEES NAMED HEREIN IN OR ABOUT THE CONSTRUCTION, REPAIR OR IMPROVEMENT OF THE JOB DESIGNATED ON THE REVERSE SIDE HEREOF." On all but two of the checks there was also stamped, "NOTE: TWO ENDORSEMENTS REQUIRED."

The district court found that the procedure was for Glassman to deliver the checks to the president of Elmore, Eubank, who endorsed the checks and took them to Clark-Fontana. After endorsement by both parties, seven of the checks were deposited in Elmore's account and two were deposited in Clark-Fontana's account. Because Elmore was having trouble meeting its payroll, Clark-Fontana allowed Elmore to retain most of the proceeds from the checks, and on the two occasions when the checks were deposited to Clark-Fontana's account, Clark-Fontana gave its own check to Elmore. On July 15, the date of the last check, the total cost of the paint that Clark-Fontana had delivered was $17,068.71, while it had deducted from the checks a total of only $7,817.16. The district court found that if Clark-Fontana had deducted the amount currently due from each check, its bill to Elmore would have been fully paid as of July 15.

Elmore's difficulty in meeting its payroll increased as the work progressed; when Glassman refused to make further advances beyond the terms of the subcontract, Elmore signed, at Glassman's request, a letter of default dated July 22, 1965. The understanding between Glassman and Elmore was that the president of Elmore would continue to stay on the job and supervise the men, but Glassman would meet the payroll. In addition, Glassman was to pay Elmore any profit remaining at the end of the job. This arrangement, of which Clark-Fontana had no knowledge, continued until a voluntary petition in bankruptcy was filed by Elmore on August 9.

To recover its unpaid balance, Clark-Fontana filed suit under the Miller Act against Elmore, Glassman and Glassman's surety, Home Indemnity Company. The defendants have now conceded liability for the cost of paint delivered after July 15, the date of the last joint check, but liability for paint delivered before that date is denied, primarily on the ground that Clark-Fontana expressly waived its right to claim under the Miller Act the $9,251.55 difference between the cost of the paint it delivered and the amount it deducted from the joint checks. Alternatively, the defendants argue that the same result can be reached on the basis of estoppel or payment.

■ Unquestionably, the Miller Act is highly remedial in nature and is "entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." Clifford F. MacEvoy Co. v. United States, for Use and Benefit of Calvin Tomkins Co., 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163 (1944). We are not unmindful that the Act places a sometimes heavy burden of care on general contractors and their sureties, and we do not hold that protection of laborers and materialmen may never be accomplished by other means so as to avoid the general contractor's statutory obligation. But where that result is attempted by means of express waiver, we think that congressional purpose requires that waiver be clear and explicit.

■ The language of the endorsements on the joint checks involved here does not seem to us to meet that requirement. Taken literally, it can be read to mean that the prime contractor discharged $2,000 of liability for every $1,000 check he drew. Alternatively, it can be read to mean that the subcontractor and the materialman waived only the amount of the proceeds that each received.[1] And, clearly, it does not say explicitly that the materialman was obligated to deduct his current due from each check at the peril of losing his statutory rights. If such a result was in fact intended it should have been carefully spelled out. See United States for

---

1. This interpretation was put upon it by the district judge at one place in his opinion: "The language in question obviously means that such existent right is being surrendered to the extent of the amount paid by the check, *with each individual party waiving the amount that it actually received.*" (Emphasis added.)

Use of B's Co. v. Cleveland Elec. Co., 373 F.2d 585 (4th Cir. 1967). Absent the clear language of an express waiver, we think that none is to be implied; as we have held in the past, requesting and accepting "additional security does not indicate an intention to waive the right to that already in hand." United States for Use of Koppers Co. v. Five Boros Constr. Corp., 310 F.2d 701, 703 (4th Cir. 1962). But see, Southwest Hardware & Lumber Co. v. Borgerson, 77 S.W.2d 195 (Mo.App. 1934); City Lumber Co. v. National Sur. Corp., 229 S.C. 115, 92 S.E.2d 128 (1956).[2]

Since Clark-Fontana was under no legal obligation to deduct its current due from each check, we think the defense of payment cannot be validly asserted. It is agreed that in fact Clark-Fontana was *not* paid to the extent of $9,241.55. Thus the defense of "payment" is no more than the assertion of a legal fiction or, at most, a shorthand statement of a legal conclusion. The thrust of the Miller Act is in the opposite direction requiring that we concern ourselves with whether in truth the materialman got his money for paint furnished. That he did not forecloses, we think, in a Miller Act case the conclusion that "payment" occurred. Even state court decisions, not involving the Miller Act and reaching a contrary result, generally avoid "payment" as the ground of decision. Hero & Co. v. Farnsworth & Chambers Co., 236 La. 306, 107 So.2d 650 (1958); F. & C. Engineering Co. v. Moore, 300 S.W.2d 323 (Tex.Civ.App. 1957). But see, Southwest Hardware & Lumber Co. v. Borgerson, 77 S.W.2d 195 (Mo.App. 1934).

Nor do we think that the materialman in this case is estopped to assert its claim. It is now settled in this circuit that "a Miller Act claimant can be foreclosed by an estoppel in pais." United States, for Use and Benefit of Gulfport Piping Co. v. Monaco & Son, Inc., 336 F.2d 636 (4th Cir. 1964). But one who would rely on the defense of estoppel must show that he has been misled to his prejudice. Thus, where materialmen furnished the subcontractor with false receipts showing payment in full to enable the subcontractor to get further payments from the prime contractor, we held that the prime contractor must show actual detriment and that the supplier would not be estopped on the mere supposition that the prime contractor would have acted differently had he known. Moyer v. United States, for Use of Trane Co., 206 F.2d 57, 39 A.L.R.2d 1098 (4th Cir. 1953). Compare Graybar Elec. Co. v. John A. Volpe Constr. Co., 387 F.2d 55 (5th Cir. 1967); United States for Use and Benefit of Lincoln Elec. Prods. Co. v. Greene Elec. Serv. of Long Island, Inc., 379 F.2d 207 (2d Cir. 1967); United States, for Use and Benefit of Noland Co. v. Wood, 99 F.2d 80 (4th Cir. 1938); Kansas City Marble & Tile Co. v. Penker Constr. Co., 86 F.2d 287 (4th Cir. 1936). Here there has been no showing that Glassman was misled to its detriment by Clark-Fontana. It was not shown, for example, that any of the money paid by Glassman was diverted by Elmore to other jobs nor that it would have cost Glassman any less to have finished the subcontract itself if Elmore had been forced to default on an earlier date by Clark-Fontana's retaining its current due from each check.

The judgment of the district court will be

Reversed.

2. Both of these cases involve state-created materialmen's liens. In spite of the absence of express waiver, the Missouri court reached a result opposite to ours on the ground of payment. The South Carolina court based its decision on estoppel and on an analogy to the discharge of a surety where the creditor has within his control funds of the principal debtor which may properly be applied to the obligation. We find the dissenting opinion of Chief Justice Stukes, 92 S.E.2d at 131, more persuasive.