441 F.2d 779
 UNITED STATES of America, for the Use of FRIEDRICH
REFRIGERATORS, INC., Plaintiff-Appellant,
v.
Vinson T. FORRESTER, Jr., et al., Defendants and Third-Party
Plaintiffs-Appellees, v. A. D. HOSCH and AAA
Heating & Air Conditioning Co.,
Third-Party Defendants.
 No. 29218.
 United States Court of Appeals, Fifth Circuit.
 May 3, 1971.
 
 Nelson M. Harris, Jr., T. Malcolm Kirby, Knight, Kincaid, Poucher & Harris, and Howell, Kirby, Montgomery & D'Aiuto, Jacksonville, Fla., for appellees Vinson T. Forrester, Jr. and American Employers Ins. Co.
 Barry L. Zisser, Jacksonville, Fla., for A. D. Hosch and AAA Air Conditioning Co.
 Before TUTTLE, DYER and SIMPSON, Circuit Judges.
 SIMPSON, Circuit Judge:
 
 
 1
 Friedrich Refrigerators, Inc. (Friedrich) brought this suit under the Miller Act, Title 40, U.S.C. 270a-270b, against the general contractor Vinson T. Forrester, Jr. (Forrester) and the surety on his bond, American Employers Insurance Company (American), to recover a balance of $9989.41, which Friedrich claims is owing it for materials supplied in connection with a construction contract at the U.S. Naval Air Station, Jacksonville, Florida. The district court found that although the claimed amount was owed to Friedrich, Friedrich was estopped to sue under the Miller Act, and dismissed the suit. We reverse for the entry of judgment in Friedrich's favor.
 
 
 2
 The facts as stated in appellant's brief, taken largely from the lower court's findings of fact, and stipulated by the appellees to be correct, are:
 
 
 3
 Forrester was the general contractor for the construction of additions and enlargements to the Naval Commissary Building No. 135 at the Naval Air Station in Jacksonville, Florida. American was the surety on Forrester's bond. AAA Heating & Air Conditioning Company of Jacksonville, Inc. (AAA) was sub-contractor on this job for various portions of the work, including that for refrigeration facilities. Friedrich furnished to AAA certain of the refrigeration materials used in the work under its contract. James Edmunds, doing business as Edmunds Refrigeration Company in Jacksonville, Florida was Friedrich's distributor in the area at the time this work was being contracted, under a 'Distributor Sales Agreement' dated April 28, 1964. The written agreement provided that Edmunds would be a non-exclusive seller of Friedrich's refrigeration products in the area; made provisions for sales of Friedrich's merchandise to Edmunds for resale to customers of Edmunds; and also provided that Friedrich could sell directly to certain parties without any payment of commissions to Edmunds. The contract further expressly provided that Edmunds was not an agent for Friedrich and should not represent himself as Friedrich's agent. Edmunds also sold merchandise for other manufacturers.
 
 
 4
 Around October 7, 1965 Edmunds went to the job site and contacted A. D. Hosch, who was President of AAA, to solicit a sale of refrigeration equipment to AAA for use in fulfilling its sub-contract with Forrester. Hosch and Edmunds established a list of refrigeration facilities as specified for the job and Edmunds quoted a price of $25,421.35 for the contemplated goods. This price included the distributor's costs, freight charges, sales taxes, and $1,000.00 profit for Edmunds. AAA then issued to Edmunds its Purchase Order No. 2067 in the amount of $25,421.35 to include all materials as specified for the job. About the same time the negotiations were proceeding with Hosch, Edmunds telephoned Friedrich in San Antonio, Texas to inquire whether an order direct from Edmunds would be acceptable to Friedrich. As Edmunds' account with Friedrich was past due at the time, Mr. Schiller, Credit Manager for Friedrich, stated that Friedrich would refuse such an order from Edmunds, and suggested that AAA make the order direct to Friedrich on AAA's order form. Edmunds was to receive his $1,000.00 back from Friedrich. Friedrich also requested a copy of the bond carried by the general contractor, a financial statement from Forrester, and an agreement from Forrester and AAA that all payments by Forrester for any equipment furnished by Friedrich on the job would be paid by check made jointly to AAA and Friedrich. On October 22, 1965 Forrester addressed a letter to Friedrich agreeing to make such payment jointly as requested. Order for the materials on AAA's order form, as well as the other documents requested by Friedrich, were forwarded to Friedrich and accepted by it and production on the order began in early November 1965.
 
 
 5
 AAA began receiving invoices for the materials furnished by Friedrich in January 1966, and pursuant to these invoices Forrester made joint partial payments totalling $21,735.22, which were accepted by Friedrich. Thereafter, a dispute arose between AAA and Friedrich over the remaining amount due Friedrich for the equipment furnished by it, by reason of a claim that several items furnished were to be returned for credit; the alleged failure of Friedrich to supply certain of the goods, necessitating AAA securing such merchandise from an outside source; and alleged deletions and additions to the job specifications, as well as alleged discounts due AAA. AAA claimed that all of these disputed matters entitled it to a setoff against Friedrich, thereby resulting in a net total contract price of only $18,928.56, and further claimed that since Friedrich had already received payments totalling $21,735.22, it had been overpaid by some $2,806.66, for which AAA counterclaimed against Friedrich in this proceeding.
 
 
 6
 On June 3, 1966 Friedrich's attorney wrote a letter to Forrester advising that the account of AAA was past due in the amount of $9,989.41, and requested payment in accordance with the letter agreement of October 22, 1965. Forrester responded that he was unable to pay the amount requested since AAA disputed the amount due Friedrich. On June 6, 1966 Friedrich's attorneys acknowledged Forrester's response, indicated that they would try to resolve the dispute with AAA, and asked for assurance from Forrester that sufficient segregated funds existed to cover the full amount for which they had requested payment. On July 14, 1966 and again on July 28, 1966, following failure to resolve the dispute with AAA, Friedrich's attorneys again wrote Forrester and renewed the claim for $9,989.41.
 
 
 7
 On August 3, 1966 Forrester's attorneys wrote to Friedrich's attorneys stating that Forrester would make his check for the full amount claimed due, payable jointly to AAA and Friedrich, in accordance with the letter agreement of October 22, 1965, in return for a release from Friedrich. On August 23, 1966, Friedrich's attorneys responded to Forrester's attorneys' offer, advising that Friedrich would not execute the requested release in exchange for the jointly payable check since AAA still disputed the amount due Friedrich on the account. In this letter Friedrich's attorneys also suggested that the only course of action then remaining was a suit under the Miller Act.
 
 
 8
 In response to the filing of the suit, Forrester and American responded by admitting that Friedrich had furnished the materials as alleged, and receipt of proper notice from Friedrich of the unpaid balance due as required under the Miller Act, then alleged that they were without knowledge as to whether or not any monies were owing to Friedrich, and specifically denied that any sums were due Friedrich. They further answered that Forrester prior to the suit tendered to Friedrich his check for $9,989.41 made payable jointly to Friedrich and to AAA, which Friedrich refused to accept.
 
 
 9
 Hosch and AAA, who were the defendants in a third-party complaint filed by Forrester, filed a counterclaim against Friedrich in which they claimed that Friedrich owed Hosch and AAA $2,806.66, rather than Friedrich being owed $9,989.41, as claimed in its complaint.
 
 
 10
 The case proceeded to trial before the court without a jury upon Friedrich's claim against Forrester and American, and upon the counterclaim of Hosch and AAA against Friedrich. During the trial and over the objection of Friedrich, the court granted the motion of Forrester and American to amend their pleadings to raise the defenses of waiver and estoppel in conformity with the evidence adduced at the trial. At the conclusion of the trial the court found that Friedrich was owed the sum of $9,989.41 which it claimed, but that recovery thereof could not be obtained under the Miller Act, holding that Friedrich in refusing the payment tendered by Forrester was estopped to recover under the Miller Act against Forrester and his surety. The court further found that AAA and Hosch had completely failed to establish the counterclaim against Friedrich, and accordingly should take nothing on the counterclaim. A judgment was then entered dismissing the complaint with prejudice upon motion of Forrester and American under Rule 41(b), from which judgment this appeal has been taken by Friedrich.
 
 
 11
 The district court, in its conclusions of law, employed the following reasoning: first, that the letter agreement of October 22, 1965, from Forrester to Friedrich, reciting Forrester's agreement to issue the checks jointly, was a binding agreement as to Friedrich as well as to Forrester and AAA; second, that Forrester's request for a release from Friedrich was not an attempt to modify the agreement because Friedrich's acceptance of the check would have worked the same result; third, that Friedrich's refusal to accept the final check constituted a breach of the agreement and lastly, that this breach estops Friedrich from asserting a claim under the Miller Act, for to hold otherwise would be to reward Friedrich for breach of its own agreement.
 
 
 12
 In contesting the above determinations, Friedrich asserts that the agreement calling for joint payment was not an enforceable contract between Forrester and Friedrich, that even if it was, Forrester breached it when he initially refused to issue a joint check and later demanded a release. In any event, Friedrich contends that the existence of an enforceable contract would not affect its right to sue under the Miller Act. Finally, Friedrich contends it never expressly waived such right and is not estopped to exercise it.
 
 
 13
 We begin our discussion by considering the effect, if any, of the joint payment agreement on Friedrich's rights under the Miller Act. Put another way, the dominant question is whether Friedrich, by requesting Forrester to make its checks to AAA payable to both AAA and Friedrich thereby waived its right to sue under the Miller Act. The Fourth Circuit has held, in two cases, that such agreements do not constitute a waiver of the Miller Act. United States v. Five Boro Construction Corporation, 4 Cir. 1962, 310 F.2d 701; United States v. Glassman Construction Company, 4 Cir. 1968, 397 F.2d 8. In each of these cases this conclusion was reached upon a determination that there was no clear showing of an intention on the part of the materialman to waive the protection afforded by the Miller Act, and that '* * * requesting and accepting 'additional security does not indicate an intention to waive the right to that already in hand." Glassman, supra, 397 F.2d 8, 11.
 
 
 14
 This Circuit's decisions require similar clarity of intention to waive. In discussing the rights of a sub-contractor under the Miller Act we have stated that 'The right to sue on the surety bond is a right created by statute, and in absence of a novation or clear expression to the contrary, the contention that there has been a waiver or release of that right must fail.' Warrior Construction, Inc. v. Harders, Inc., 5 Cir. 1967, 387 F.2d 727, 729.
 
 
 15
 We conclude that Friedrich's request for the joint payment procedure did not constitute a waiver of its rights under the Miller Act, but was simply a request for and acceptance of additional security. Consequently, even the acceptance by Friedrich of the jointly made check offered by Forrester would not have defeated recovery by Friedrich under the Miller Act, if Friedrich in fact remained unpaid (assuming Friedrich had not also executed a binding release or waiver of its Miller Act rights). A similar result was reached in Glassman, supra. There, the prime contractor had issued checks in sufficient number and amount to cover the cost of the material supplied by the materialman prior to the subcontractor's default. However, because the subcontractor was having difficulties in meeting its expenses, the materialman had allowed the subcontractor to retain more than its proportionate share of the joint checks. Following the subcontractor's default, a Miller Act suit was initiated by the materialman. Despite the asserted defenses of waiver, estoppel and payment, the Fourth Circuit allowed the materialman to recover the difference between the amount the materialman actually retained from the joint checks and the cost of the material delivered.
 
 
 16
 The above determination requires that the request of Forrester for a release from Friedrich in exchange for the joint check be viewed in a different light than that in which it was considered by the district court. That court determined that the request for a release was not an attempt to modify the agreement because Friedrich's acceptance of the check would have worked the same result, i.e. barred Friedrich from suing under the Miller Act.[1] As we have demonstrated above, this reasoning is erroneous. Since Friedrich's acceptance of the joint check, without more, would not have denied it the protection of the Miller Act, Forrester's demand for a release in exchange for the check did constitute an attempt to modify the agreement. We conclude that Friedrich was justified in refusing the joint check and in bringing the instant suit.
 
 
 17
 Lastly, we look to the lower court's ultimate reason for disallowing Friedrich's recovery under the Miller Act: estoppel. As previously indicated, this defense was asserted in United States v. Glassman Construction Company, supra, where the court, after noting that 'one who would rely on the defense of estoppel must show that he has been misled to his prejudice', allowed recovery by the materialman after finding that the prime contractor had not been misled to its detriment. 397 F.2d 8, 11. It is likewise the well settled rule in this Circuit that while estoppel may be a proper defense in a Miller Act case, there must first be shown a detriment to the party asserting it. Graybar Electric Co. v. John A. Volpe Construction Co., 5 Cir. 1967, 387 F.2d 55, 59, and cases cited. In the present case, we do not find that Forrester relied to its detriment on Friedrich's refusal to accept the check. For example, the amount owed was not paid over to AAA after Friedrich's refusal. It was paid to no one and Friedrich was simply left unpaid for the material furnished by it. We think it is hence apparent that estoppel was not a proper basis for denying Friedrich recovery in the absence of a showing of detriment to Forrester.
 
 
 18
 Forrester asserts that the costs incident to the present suit, to include possibly Friedrich's attorneys' fees, constituted sufficient detriment. In the first place we do not agree that such detriment is of the type contemplated in the prerequisites to a successful defense of estoppel. See Graybar Electric Co. v. John A. Volpe Construction Co., supra. Further, if our reversal turned solely on the ground that estoppel was not available for lack of detriment to Forrester, a holding that Friedrich is at least estopped to recover attorneys' fees might be appropriate. We do not decide this point. As we have indicated, our decision rests also upon the determination that Friedrich's refusal to accept the check and its initiation of this suit was justified by Forrester's refusal to issue the check without a release.
 
 
 19
 The judgment of the district court dismissing the appellant's complaint with prejudice is reversed and set aside, and that court is directed to enter judgment in favor of Friedrich and against Forrester and American in the amount claimed plus attorneys' fees for services rendered in the district court and on this appeal. The district court is directed to fix such fees. Reversed, with directions.
 
 
 
 [1]
 In addition to a release, Forrester also demanded from Friedrich an assignment of its right 'to the aforesaid claim for labor and/or material furnished, and against any other individual, firm, corporation or fund.'