UNITED STATES of America For and on Behalf of J. W. Smith & Co., Plaintiff-Appellant,

v.

AETNA CASUALTY & SURETY CO., and Wieman-Slechta Co., Defendants-Appellees.

UNITED STATES of America For and on Behalf of J. W. Smith & Co., Plaintiff-Appellee,

v.

AETNA CASUALTY & SURETY CO., and Wieman-Slechta Co., Defendants-Appellants.

Nos. 72–1422, 72–1468.

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1973.

Decided June 29, 1973.

sky v. Paiewonsky, 446 F.2d 178, 181, 8 V.I. 421 (3d Cir. 1971), *et al.*, as cited by the majority. That presumption is inapplicable in cases such as the present one when the issue is not one merely of interpreting the borrowed statute, but the reconciliation of that statute with other local statutes which create distinctly different problems in the two jurisdictions.

Warren S. Zwieback, Omaha, Neb., for J. W. Smith & Co.

Stephen A. Davis, Omaha, Neb., for Aetna Casualty.

James F. Kasher, Omaha, Neb., for Wieman-Slechta.

Before MATTHES, Chief Judge, and MEHAFFY and STEPHENSON, Circuit Judges.

MATTHES, Chief Judge.

J. W. Smith and Company (Smith), a mechanical subcontractor, instituted this suit under the Miller Act, 40 U.S.C. § 270a et seq., to recover from the prime contractor, Wieman-Slechta Company (Wieman-Slechta), and its surety, Aetna Casualty and Surety Company (Aetna), the sum of $23,618.89 allegedly due on a subcontract in connection with a federal construction project.

Two issues were tried to the court, the first being whether a letter, dated April 3, 1970, prepared by Wieman-Slechta and signed by Smith, reciting payment of $14,335.92 by Wieman-Slechta to Smith in full settlement of all accounts, coupled with Smith's subsequent negotiation of Wieman-Slechta's check in the same amount, constituted an accord and satisfaction of all accounts between Smith and Wieman-Slechta.

In resolving this question, the trial court found that the parties intended the letter to be a sham for the purpose of deceiving Aetna and as such was "of no effect in relation to the debt between Smith and Wieman-Slechta. . . ."

The second issue before the court was whether, by reason of the sham letter, a copy of which had been sent to Aetna by Wieman-Slechta, Smith was estopped from asserting its claim against Aetna. The court ruled that Smith was estopped.

Accordingly, judgment was entered in favor of Smith against Wieman-Slechta for $23,618.89, stipulated by the parties to be the amount in controversy, and in favor of Aetna.

Smith's appeal challenges the trial court's finding and judgment relieving Aetna of liability on the ground of estoppel.

Wieman-Slechta, by cross-appeal, urges that the trial court erred in not finding that the April 3 letter was an accord and satisfaction of all accounts between Wieman-Slechta and Smith, and in not finding that, in any event, Wieman-Slechta had partially paid the amount due. Specifically, Wieman-Slechta asserts that its indebtedness to Smith for the purposes of this case is $15,178.94 instead of $23,618.89.

Aetna, in its brief and at oral argument, defends the court's action relieving it from liability.

We affirm the judgment against Wieman-Slechta but reverse the judgment in favor of Aetna.

On September 1, 1969, Wieman-Slechta entered into a written contract with the federal government for the construction of an auto hobby shop at Offutt Air Force Base, near Omaha, Nebraska. As required by the Miller Act, Wieman-Slechta executed at the same time a payment bond with Aetna for the protection of all persons supplying labor and material to the project. A day later, Wieman-Slechta subcontracted with Smith for the performance of all mechanical work. By March 15, 1970, Smith had satisfactorily completed the work at a contract price, including extras, of $43,658.66. Wieman-Slechta and Smith had worked together under similar ar-

rangements on previous projects, several of which were still in progress at the time of the auto hobby shop job. The accounts of the parties in relation to two of these previous projects were in spirited dispute. Although some progress payments had been made by Wieman-Slechta to Smith on the auto hobby shop job, in late March, 1970, Smith complained to a representative in Aetna's claims department that payments had become delinquent. In response, Aetna apparently warned Wieman-Slechta to bring its accounts up to date or Aetna would refuse to issue future bonds to the company.

On April 3, 1970, Mr. Wieman of Wieman-Slechta called J. W. Smith to his offices and presented to him the letter in controversy reciting payment of $14,335.92 by Wieman-Slechta to Smith in full settlement of all accounts. Mr. Smith signed the letter and thereupon Wieman handed Smith a check, dated April 8, 1970, for the same amount.

On April 6, not yet having cashed the post-dated check, Smith mailed a letter to Wieman-Slechta acknowledging receipt of the letter of April 3 "[w]ith protest" and restating the accounts between the parties to show a balance due Smith on all accounts of approximately $70,000. Thereafter, Smith negotiated the post-dated check.

The parties stipulated that a copy of the letter of April 3 was forwarded to an authorized agent and attorney in fact for Aetna by Wieman-Slechta who forwarded the letter without comment to Aetna where it was placed in the auto hobby shop job file. Neither Smith nor Wieman-Slechta forwarded a copy of the April 6 letter of protest to Aetna.

Several times in early July, Smith spoke by telephone with Aetna representative Bill Lee and requested payment of approximately $24,000 from Aetna on the bond for work performed by Smith on the auto hobby shop job. In reply, Mr. Lee apparently referred to the copy of the letter of April 3 contained in the surety's file showing a full settlement of accounts. Mr. Lee suggested that Smith proceed against Wieman-Slechta.

On July 30, 1970, Wieman-Slechta sent Smith a letter directing the proper application of previous payments and incidentally setting forth the status of the accounts between the parties. The letter showed a balance of $24,018.89 due Smith on the auto hobby shop job. Shortly thereafter, to no avail, Mr. Smith again called Mr. Lee of Aetna and read him the contents of the July 30 letter. Mr. Smith also informed Lee of the April 6 letter of protest.

Between the dates of April 8 and September 14, 1970, Wieman-Slechta was paid $26,083.51 by the federal government pursuant to the prime contract.

## ACCORD AND SATISFACTION

Accord and satisfaction has been defined as a discharge of an existing indebtedness by the rendering of some performance different from that which was claimed as due and the acceptance of such substituted performance by the claimant in full satisfaction of his claim. Ruehle v. Ruehle, 161 Neb. 691, 74 N.W.2d 689 (1956); 6 Corbin, Contracts § 1276, p. 115 (1962). Part payment of an unliquidated and disputed debt may effectively operate as a discharge by accord and satisfaction if the parties so agree. Slade v. Swedeburg Elevator Co., 39 Neb. 600, 58 N.W. 191 (1894). Indeed, "[t]he key element of accord and satisfaction is the intention of the parties, which as a rule presents a question of fact." Black v. Denver United States National Bank, 362 F.2d 38, 41 (9th Cir.), cert. denied, 385 U.S. 990, 87 S.Ct. 596, 17 L.Ed.2d 451 (1966).

If, as found by the trial court, the letter of April 3 was a sham, Wieman-Slechta's efforts to enforce the letter as an accord and satisfaction are in

vain. For it is settled and sound law that when two parties execute a written instrument purporting to be a contract when in fact it is not, the purpose being to deceive a third person, the instrument is unenforceable by either of the immediate parties. Nice Ball Bearing Co. v. Bearing Jobbers, 205 F.2d 841 (7th Cir.), cert. denied, 346 U.S. 911, 74 S.Ct. 242, 98 L.Ed. 408 (1953); Coffman v. Malone, 98 Neb. 819, 154 N.W. 726 (1915); 6A Corbin, Contracts § 1473, p. 607 (1962). Nor, in such cases, is the parole evidence rule applicable since the document was not in fact an agreed integration of a real bargain. Coffman v. Malone, *supra*, 154 N.W. at 727.

■■ The record before us contains substantial evidence supporting the trial court's finding that the April 3 letter was a sham and that the parties did not intend it to operate as a full discharge of the amounts due Smith by Wieman-Slechta. In this regard, we note especially the following undisputed facts:

On April 3 and prior thereto, Wieman-Slechta stood in danger of losing Aetna as a surety on future jobs unless Smith was paid;

Smith was hard-pressed financially, had to meet a payroll and would "do almost anything" to receive payment;

An account receivable on Wieman-Slechta's books of $24,549.52, purportedly settled by the letter of April 3, was disputed by Smith, and was the subject of a lawsuit filed in the Nebraska state court by Wieman-Slechta against Smith prior to April 3 and still pending when this case was tried;

In the letter of July 30 to Smith, Wieman-Slechta admitted a "balance [due Smith] as of July, 1970 our books" of $24,018.89 on the auto hobby shop job account. When interrogated about this letter, Mr. Wieman offered no explanation other than that "[m]y records would show that."

### ESTOPPEL

■ Broadly speaking, the essential elements of an equitable estoppel, as related to the party claiming the estoppel are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the misleading conduct or false representations of the party to be estopped; and (3) change in position based thereon to his injury, detriment or prejudice. 28 Am.Jur.2d Estoppel and Waiver § 35 (1966).

"The doctrine of equitable estoppel does not erase the duty of due care and is not available for the protection of one who has suffered loss solely by reason of his own failure to act." Hampton v. Paramount Pictures Corp., 279 F. 2d 100, 104 (9th Cir. 1960).

Estoppel has been recognized as a valid defense to a Miller Act claim in a number of cases. United States v. Forrester, 441 F.2d 779, 783 (5th Cir. 1971); United States v. Glassman Construction Co., 397 F.2d 8, 11 (4th Cir. 1968); Graybar Electric Co. v. John A. Volpe Construction Co., 387 F.2d 55, 59 (5th Cir. 1967); United States v. Greene Electrical Service, 379 F.2d 207, 210 (2d Cir. 1967); Moyer v. United States, 206 F.2d 57, 60 (4th Cir. 1953), 39 A.L.R.2d 1098 (1955). See cases collected in Annot., 39 A.L.R.2d 1104 (1955).

In what appears to be the leading case on the defense of estoppel to a Miller Act claim, Moyer v. United States, 206 F.2d 57 (4th Cir. 1953), 39 A.L.R.2d 1098 (1955), the court held that a group of materialmen was not estopped from recovering for supplies furnished a subcontractor on the ground that they had given false receipts of payment to the subcontractor, in the absence of a showing that the prime contractor and surety had relied on the false receipts to their detriment.

In the present case, the district court was persuaded to hold that Aetna relied

to its detriment on the April 3 sham letter by failing to prevent the release of government funds sufficient to satisfy Smith's claim.

As we view this record, the court's finding rests upon several faulty premises. First, there is no direct evidence of Aetna's reliance on the April 3 letter. The only representative of Aetna to testify, John P. Dowd, a claims superintendent, merely stated that he had seen the letter in the project file. At no time did Mr. Dowd testify that the company had relied on the letter in rejecting Smith's claim. Secondly, assuming for the purposes of argument the presence of sufficient indirect evidence of Aetna's reliance, we are convinced that any such reliance was plainly unwarranted. It stands undisputed that in the months prior to final payment by the government to Wieman-Slechta, Smith contacted Aetna numerous times by telephone and demanded payment on the bond. During these conversations Aetna was informed of Smith's April 6 letter repudiating the alleged settlement, and of Wieman-Slechta's July 30 letter acknowledging a balance due of approximately $24,000.

■■ In view of the foregoing we conclude that Aetna had sufficient notice of Smith's claim prior to the time that final payment was made by the government to Wieman-Slechta, and that by the exercise of diligence and due care Aetna could have taken appropriate action to prevent final payment. Aetna instead assumed the position, according to unimpeached testimony, that it was necessary for Smith to exhaust all efforts to collect from Wieman-Slechta before it would intervene.

■■■ The Miller Act is intended to protect those who furnish labor and material for public construction and to insure they will be paid that which is due. The Act is highly remedial in nature, and entitled to a liberal construction and application in order to properly effec-

tuate the congressional intent. Graybar Electric Co. v. John A. Volpe Construction Co., *supra*, 387 F.2d at 58.

Although we certainly recognize that the findings of the trial court should be sustained unless clearly erroneous, this record drives us to the conclusion that a mistake has been made in relieving Aetna from its liability on the bond. *See* United States v. United States Gypsum Co. 333 U.S. 364, 394–395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Accordingly, the judgment dismissing Aetna must be vacated.

There remains for consideration Wieman-Slechta's argument that the district court erred in finding a partial payment had not been made on the account. Wieman-Slechta asserts that a proper analysis of the evidence shows that the correct balance on the auto hobby shop job is $15,178.94. On this basis, Wieman-Slechta asks this court to modify the judgment by reducing it to that amount.

Although the district court did not review in its memorandum opinions the details of the various transactions of the parties as to payments, the court manifestly considered the various exhibits and testimony relating to the accounts. In its opinion on the motion of Wieman-Slechta to alter or amend the judgment the court found that Wieman-Slechta failed to prove payment of the account in full *or in part*.

■■ Wieman-Slechta has not demonstrated to our satisfaction that the court's finding on this aspect of the case is clearly erroneous. We therefore reject the claim of partial payment.·

The judgment entered on April 27, 1972, is vacated and the cause is remanded with directions to the district court to enter another judgment in favor of Smith and against Wieman-Slechta and Aetna Casualty and Surety Co. for $23,618.89 plus appropriate interest.

Costs shall be taxed equally against Wieman-Slechta and Aetna.