**UNITED STATES of America for the Use and Benefit of UNITED ELECTRIC CORPORATION, a corporation, Plaintiff/Appellee, Cross-Appellant,**

v.

**NATIONAL BONDING & ACCIDENT INSURANCE COMPANY, Defendant/Appellant, Cross-Appellee.**

Nos. 82–4365, 82–4380.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 10, 1983.

Decided July 19, 1983.

As Amended Oct. 31, 1983.

Barry A. Dubin, John F. Taylor, Dinkelspiel & Dinkelspiel, San Francisco, Cal., for plaintiff/appellee, cross-appellant.

Michael Robert Bassin, Los Angeles, Cal., David H. Gregerson, Minneapolis, Minn., for defendant/appellant, cross-appellee.

Before MERRILL, Senior Judge, FLETCHER and PREGERSON, Circuit Judges.

PER CURIAM:

The district court granted summary judgment in favor of a supplier of materials and against a surety who issued a bond on a government construction contract. Because the district court failed to consider relevant extrinsic evidence that would have made the bond's language reasonably susceptible to the interpretation urged by the surety, we hold that summary judgment on the issue of the surety's liability under the bond was inappropriate. We therefore need not reach the issue raised in the supplier's cross-appeal, i.e., whether the court erred in limiting the supplier to a recovery of prejudgment interest, rather than accrued service charges in accordance with its supply contract.

FACTS

In August 1977, the U.S. Air Force awarded Standard Conveyor Co. (Standard) a contract for the design, fabrication, installation, and testing of a Mechanized Material Handling System (the System) at McClellan Air Force Base in Sacramento. In compliance with the Miller Act, 40 U.S.C. §§ 270a–270d, Standard obtained a surety bond from appellant National Bonding & Accident Insurance Co. (National) in the amount of $494,665.50 covering "all persons supplying labor and material" for the government contract. Standard then entered into an agreement with use plaintiff United Electric Corp. (United) for the purchase of $119,086.42 in electrical materials to be used in the System.

Before the System was completed, Standard defaulted on the government contract and filed a bankruptcy petition. United, which was still owed $107,958.42, then filed the instant action against National on the bond.

In May 1981, National moved for summary judgment, contending that its bond covered only installation and testing of the System—not supplying of materials—so that United, as a supplier, could proceed only against the contractor, Standard. National based its argument on the fact that the bond was issued in reference to only one of two government contract "line items." Line item 0001 was for design and fabrication of the System and had a unit price of approximately $3 million; line item 0002 was for installation and testing and had a unit price of approximately $1 million. The contract provided that "[b]onds will be required and based on the dollar amount of item 0002."

United, on the other hand, argued that both the language of the bond and the "letter and spirit" of the Miller Act require that suppliers be covered under the bond. United maintained that National's liability had to be determined by the terms of the bond without reference to the underlying government contract.

The district court denied National's motion for summary judgment. The court ruled that, because "no ambiguity as to coverage appears on the face of the bond," the extrinsic evidence offered by National

that suppliers were not covered would be "disregarded."

In September 1981, National filed a motion for reconsideration of the order denying summary judgment. At the same time, United sought summary judgment for recovery under the bond of both the principal obligation and accrued service charges [1] due from Standard. The court granted National's motion for reconsideration "in order to amplify" its reasons for having denied summary judgment for National, granted partial summary judgment for United on the issue of National's liability to United under the bond, and denied summary judgment with respect to the amount of damages.

In February 1982, United filed a second motion for summary judgment on the issue of damages. The court granted the motion, awarding damages in the principal sum of $107,958.52. However, the court denied United's request for $69,995.61 in accrued service charges as unreasonable liquidated damages and instead awarded United $22,-671.27, representing prejudgment interest at the rate of seven percent per annum.

These are cross-appeals from the district court's summary judgment orders. National argues that the court misapplied the parol evidence rule in interpreting the bond to cover suppliers such as United, while United contends that the court erred in denying recovery of accrued service charges.

## DISCUSSION

The admissibility of parol evidence under California law is determined according to the procedure outlined in *Brobeck, Phleger & Harrison v. Telex Corp.,* 602 F.2d 866 (9th Cir.), *cert. denied,* 444 U.S. 981, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979).[2] There this court stated:

1. The invoices from United to Standard stated that "[a] monthly service charge equal to the highest rate allowed by law will be made on all past due accounts."

2. There is no question that federal law governs actions brought under the Miller Act. *See F.D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 127, 94 S.Ct. 2157, 2164, 40 L.Ed.2d 703 (1974). Nevertheless, where, as here, neither the Miller Act nor any other applicable federal law provides standards for resolving a given issue, a court may look to state law "'as a matter of convenience and practicality.'" *United States, ex rel. Georgia Electric Supply Co., Inc. v. U.S. Fidelity and Guaranty Co.,* 656

[T]he determination of whether a written contract is ambiguous is a question of law that must be decided by the court. [Citations.] Even if the written agreement is clear and unambiguous on its face, the trial judge must receive relevant extrinsic evidence that can prove a meaning to which the language of the contract is "reasonably susceptible." [Citations.] If the court finds after considering this preliminary evidence that the language of the contract is not reasonably susceptible of interpretation and is unambiguous, extrinsic evidence cannot be received for the purpose of varying the terms of the contract. [Citations.]

*Id.* at 871.

In the instant case, the district court first denied summary judgment for National based solely on the terms of the bond. Upon reconsidering its ruling, the court determined that, although "a bond and the underlying contract must be construed together,"[3] suppliers such as United were nevertheless covered under National's bond. The court stated, however, that

[i]t is always possible ... that a different result would obtain if the court were permitted to look past the contract and bond to the quantity of parol evidence presented by [National].

Under the principles of *Brobeck,* it is clear that the court erred in not considering relevant extrinsic evidence offered by National to prove that coverage under the bond did not extend to suppliers. National sought to introduce, for example, a written statement by one federal contracting officer that "bonds were required for the construction portion of the contract" and

F.2d 993, 997 (5th Cir.1981) (quoting *Louisiana & Arkansas Ry. Co. v. Export Drum Co.,* 359 F.2d 311, 317 (5th Cir.1966) (footnote omitted)). In this case, the most appropriate reference is most likely to California law, since the construction project was located and the contracts were executed in California. *See id.*

3. The district court correctly relied on, *inter alia, Glens Falls Indemnity Co. v. Basich Bros. Construction Co.,* 165 F.2d 649, 650 (9th Cir.), *cert. denied,* 334 U.S. 833, 68 S.Ct. 1347, 92 L.Ed. 1760 (1948), for the proposition that a bond and underlying contract must be construed together.

"would not be required until such time as notice to proceed is given on item 0002, 'Construction Portion,' of the contract." Moreover, a second contracting officer had answered an interrogatory to the effect that "bonds were not required under line item 0001 of the subject contract." Had the district court considered such evidence in addition to the bond and contract, it might have found the language of the bond reasonably susceptible to National's interpretation. Summary judgment on National's liability under the bond was thus inappropriate.

In light of our holding regarding liability, we need not determine whether the district court properly found that United's claim for approximately $70,000 in accrued service charges was unreasonable as liquidated damages. We note, however, that under Cal.Civ.Code § 1671 a liquidated damages clause in a commercial contract is presumed valid unless the party seeking to invalidate the clause establishes that it was unreasonable under the circumstances existing at the time the contract was entered into. Thus, at trial National bears the burden of showing that the accrued-service-charges provision in the United-Standard supply contract was unreasonable at the time the contract was formed.

## CONCLUSION

The district court's order granting summary judgment in favor of United on the payment bond is reversed and the case remanded for trial on the disputed issues relating to the scope of coverage under the bond and United's right to recover service charges.

