802 F.2d 1164
 33 Cont.Cas.Fed. (CCH) 74,665
 UNITED STATES of America for the use of YOUNGSTOWN WELDING
AND ENGINEERING COMPANY, a corporation,
Plaintiffs/Appellees/Cross/Appellants,
v.
The TRAVELERS INDEMNITY COMPANY, a corporation, and A.S.C.
Constructors, Inc., a corporation,
Defendants/Appellants/Cross/Appellees.
 Nos. 84-1673, 84-1704.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 14, 1985.
Decided Oct. 21, 1986.
 
 John H. Westover, David L. Kurtz, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Phoenix, Ariz., for U.S., et al.
 Steven A. Hirsch, Evans, Kitchel & Jenckes, P.C., Phoenix, Ariz., for Travelers Indem. Co.
 Appeal from the United States District Court for the District of Arizona.
 Before KENNEDY, ALARCON, and NELSON, Circuit Judges.
 KENNEDY, Circuit Judge:
 
 
 1
 The United States for the use of Youngstown Welding and Engineering Company (Youngstown) appeals from the portion of the district court's judgment denying its claims against A.S.C. Constructors, Inc. (ASC) for breach of contract and unjust enrichment. ASC and its surety, the Travelers Indemnity Company (Travelers), cross-appeal from the district court's amended order awarding Youngstown $173,079.41 under the Miller Act, 40 U.S.C. Sec. 270b (1982), for materials provided by Youngstown for a construction project undertaken by ASC for the Bureau of Reclamation, Department of the Interior. We affirm.
 
 
 2
 In February 1980, ASC contracted with the Bureau of Reclamation to perform one phase of the construction of the Yuma Desalting Plant. ASC, as required by the Miller Act, furnished a payment bond to the government, with Travelers as surety. See 40 U.S.C. Sec. 270a(a)(2) (1982). ASC asked Propipe Corporation (Propipe) to furnish aluminum bronze pipe, and Propipe in turn asked Youngstown to manufacture it. Youngstown suggested Propipe obtain progress payments from ASC by joint checks payable to both Youngstown and Propipe. Before any formal contract was reached between Propipe and either Youngstown or ASC, Propipe informed Youngstown that a UCC-1 document transferring ownership of the pipe to ASC was required before ASC would make progress payments. ASC insisted on the document because the government would not make payments to ASC absent documentation that title to the pipe had passed to ASC. Youngstown contacted ASC regarding the UCC-1 form and also confirmed that ASC's payments to Propipe would be by joint check. On June 10, 1980, Youngstown forwarded the UCC-1 form and a bill of sale to ASC. The ASC-Propipe purchase order was executed on the same date. On June 25, 1980, the Youngstown-Propipe purchase order was executed.
 
 
 3
 At least five checks were made payable jointly to Youngstown and Propipe for material manufactured by Youngstown and delivered by Propipe to ASC. Four of the checks contained the following endorsement language on the reverse side:
 
 
 4
 ENDORSEMENT OF THIS CHECK BY YOUNGSTOWN WELD ACKNOWLEDGES RECEIPT OF PAYMENT IN FULL FOR ALL OF THE MATERIAL AND/OR LABOR SAID PAYEE HAS PROVIDED UNDER AGREEMENT WITH PROPIPE CORPORATION FOR YUMA DESALTING PLANT UP TO AND INCLUDING THE DATE OF THIS CHECK; RELEASING ANY LIEN, STOP NOTICE, OR BOND RIGHTS SAID PAYEE MIGHT HAVE, REGARDLESS OF THE AMOUNT OF MONEY ACTUALLY RETAINED BY SAID PAYEE OUT OF THE PROCEEDS OF THIS CHECK.
 
 
 5
 On September 23, 1980, Propipe filed a petition for bankruptcy under Chapter 11. The last payment made by ASC was on September 26, 1980, after which ASC withheld back charges from Propipe under the purchase order, and also withheld contract proceeds pursuant to the general provisions of the ASC-Propipe purchase order. Youngstown sent a notice to ASC pursuant to 40 U.S.C. Sec. 270b(a) on December 1, 1980, demanding payment under the Miller Act. On December 19, 1980, ASC, having been paid in full by the government on the Yuma contract, terminated its purchase order with Propipe. Youngstown instituted proceedings, in the name of the United States, against both ASC and Travelers in the district court pursuant to 40 U.S.C. Sec. 270b(b), seeking payment of $173,079.41 for materials provided to Propipe for incorporation into ASC's government contract. Youngstown also sought to recover the same amount from ASC as damages for breach of contract or as unjust enrichment.
 
 
 6
 While the district court found no contract between Youngstown and ASC and no ground for recovery under an unjust enrichment theory, it ruled for Youngstown under the Miller Act. 40 U.S.C. Sec. 270b(a) (1982). The district court originally awarded damages of $13,675.15 against ASC and Travelers on the Miller Act claim, holding further recovery precluded by the releases on the ASC checks. On Youngstown's motion for reconsideration, the district court held the release invalid for lack of consideration and awarded Youngstown $173,079.41. ASC appeals the award; Youngstown appeals the rejection of its contract and restitution claims since it would have been entitled to attorney's fees under Arizona law had it prevailed on either theory. See Ariz.Rev.Stat. Sec. 12.341.01 (1982) (fee award in contract action); Ruck Corp. v. Woudenberg, 125 Ariz. 519, 611 P.2d 106, 108-09 (App.1980) (fees recoverable in unjust enrichment action). No fee award is permitted under the Miller Act unless one of the traditional exceptions to the American Rule is established. See F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 126-31, 94 S.Ct. 2157, 2163-66, 40 L.Ed.2d 703 (1974).
 
 
 7
 We consider first ASC's argument on cross-appeal that Youngstown's acceptance of the endorsement language on the four joint checks bars its recovery under the Miller Act or under an implied contract between itself and Youngstown. The district court's amended holding stated Youngstown's release was invalid for lack of consideration. As this is a conclusion of law, we review the district court's determination de novo. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 8
 It is well settled that the Miller Act provides security for those furnishing labor and materials on government projects and should be construed liberally to effect this object. See, e.g., United States ex rel. Bailey v. Freethy, 469 F.2d 1348, 1350 (9th Cir.1972); Warrior Constructors, Inc. v. Harders, Inc., 387 F.2d 727, 729 (5th Cir.1967). While it is possible for a supplier to waive his rights under the Act, see, e.g., United States ex rel. B's Co. v. Cleveland Electric Co., 373 F.2d 585, 588 (4th Cir.1967); United States ex rel. Koppers Co. v. Five Boro Construction Corp., 310 F.2d 701, 702-03 (4th Cir.1962), the federal courts have been uniform in their insistence that a waiver be clear and explicit, United States ex rel. Friedrich Refrigerators, Inc. v. Forrester, 441 F.2d 779, 782 (5th Cir.1971); United States ex rel. Clark-Fontana Paint Co. v. Glassman Construction Co., 397 F.2d 8, 10 (4th Cir.1968). The precedents indicate, moreover, that waiver will not be implied from a joint check arrangement, as the additional security provided a materialman by joint check payment does not evidence an intention to give up the statutory security provided by the Act. Friedrich Refrigerators, 441 F.2d at 782; Glassman Construction, 397 F.2d at 10-11.
 
 
 9
 Unlike the release in Glassman Construction, a case relied on by Youngstown, the language included by ASC on the backs of the joint checks was unambiguous. The checks explicitly state that "ENDORSEMENT OF THIS CHECK BY YOUNGSTOWN WELD ACKNOWLEDGES RECEIPT OF PAYMENT IN FULL FOR ALL OF THE MATERIAL AND/OR LABOR SAID PAYEE HAS PROVIDED ... UP TO AND INCLUDING THE DATE OF THIS CHECK," thereby dispelling any doubt regarding either the amount purported to be released or by whom the release was executed. Consequently, if the release is otherwise valid as a matter of contract law, it will not fail to be enforced for want of the special clarity demanded of waivers of Miller Act rights.
 
 
 10
 Since neither the Miller Act nor any other federal law provides standards, apart from the requirement of clarity, for determining what constitutes a valid release, we may look to state law for guidance. See United States ex rel. United Electric Corp. v. National Bonding & Accident Insurance Co., 711 F.2d 131, 133 n. 2 (9th Cir.1983) (per curiam). Under Arizona law a release must be supported by consideration. See, e.g., State Farm Fire & Casualty Co. v. Rossini, 14 Ariz.App. 235, 482 P.2d 484, 488-89 (stating rule and finding no consideration), vacated, 107 Ariz. 561, 490 P.2d 567, 570 (1971) (finding consideration). Although the rule has been subject to criticism, see Restatement (Second) of Contracts Sec. 73 comment c at 18 (1981), in Arizona, performance of a preexisting legal duty is not sufficient consideration. See, e.g., Ring v. Taylor, 141 Ariz. 56, 685 P.2d 121, 130 (App.1984) (stating rule but finding other consideration to support release). As explained below, Youngstown was an intended beneficiary of the joint check provision in the Propipe-ASC purchase order. Absent some showing of an honest dispute about this obligation, see Restatement (Second) of Contracts Sec. 73 (1981), the joint check arrangement could not provide consideration for the subsequent release. The district court was correct in so ruling.
 
 
 11
 The district court concluded that "the joint check arrangement was placed into the purchase order as an additional security to Youngstown." In holding that this intention to benefit Youngstown made Youngstown a third party beneficiary to the progress payment provisions of the ASC-Propipe purchase order, the district court acted in accordance with Arizona law. See e.g., Maganas v. Northroup, 135 Ariz. 573, 663 P.2d 565, 567-68 (1983) (person found third party beneficiary where contract manifested intention to confer a direct benefit on him).
 
 
 12
 ASC argues that sufficient consideration for the release was given despite any preexisting duty it might have under the Propipe-ASC purchase order to make payments by joint check, relying principally on Morrison Flying Service v. Deming National Bank, 404 F.2d 856 (10th Cir.1968), cert. denied, 393 U.S. 1020, 89 S.Ct. 628, 21 L.Ed.2d 565 (1969). Morrison is distinguishable, however, since in that case the party in the position of Youngstown (the Bank) was not a third party beneficiary of a contract. Rather, as assignee of one party's right to contract proceeds, the Bank promised another party (Morrison) that it would pay him sums due to him under a contract with the assignor if the assignor did not. Because ensuring the performance of the contract between Morrison and the Bank's assignor was clearly beneficial to the Bank, in that it tended to protect the Bank's right to proceeds, the promise given by the Bank to help ensure that performance was supported by consideration. See id. at 860-61. The court specifically noted that the case did not involve any preexisting duty owed by the promisee (Morrison) to the promisor (the Bank). Id. at 860. The ASC-Propipe purchase order, however, by making Youngstown an intended beneficiary of the joint check agreement, created just such a direct duty in the case before us.
 
 
 13
 The lack of consideration for a release is not fatal if equitable estoppel is shown. To establish equitable estoppel, ASC must show that (1) Youngstown knew the facts surrounding the release and (2) intended its conduct to be acted upon, or gave ASC the right to believe that it so intended, while (3) ASC must be ignorant of the true facts surrounding the transaction, and (4) ASC must rely on Youngstown's conduct to its detriment. See, e.g., United States v. Georgia-Pacific Co., 421 F.2d 92, 96 (9th Cir.1970). Although Youngstown's failure to express reservations about the proffered release makes this theory appealing, ASC has not shown how it relied to its detriment on Youngstown's endorsements, since in issuing the joint checks it did nothing that it was not already obligated to do. ASC has not pointed to any provision of the ASC-Propipe purchase order that would have permitted it to suspend joint check payments if in fact it knew Youngstown did not fully satisfy its claims with each check as received, nor has it shown why it would be subject to double recovery if it now pays Youngstown with funds it has not yet paid to Propipe. Instead, ASC has incorrectly urged that a series of California decisions barring suits against contractors by suppliers receiving joint check payments shows judicial recognition of a practice in the construction industry that establishes the elements of estoppel, including reliance, as a matter of law. See, e.g., Post Brothers Construction Co. v. Yoder, 20 Cal.3d 1, 569 P.2d 133, 141 Cal.Rptr. 28 (1977). Whatever the value of these cases in showing that any reliance by ASC on Youngstown's actions would have been reasonable, such arguments will not substitute for a showing of actual detriment in a Miller Act case. See Glassman, 397 F.2d at 11 (contractor must show actual detriment; supplier will "not be estopped on the mere supposition that the ... contractor would have acted differently had he known").
 
 
 14
 We are further persuaded to reject ASC's equitable estoppel claim because it was not sufficiently raised below. The trial court made no findings regarding the elements of estoppel, either in its original or amended decision. While in its answer ASC alleged estoppel as an affirmative defense, the pretrial order limits the issues for trial to whether there was a valid release, or an accord and satisfaction. Generally, such an order supersedes the pleadings. See Robuck v. Dean Witter & Co., 649 F.2d 641, 646 (9th Cir.1980). Construing the pretrial order liberally, Miller v. Safeco Title Insurance Co., 758 F.2d 364, 368 (9th Cir.1985), we think the issue below was framed as whether the elements of a valid release were present, and not whether Youngstown should be equitably estopped from contesting the validity of the release at all. In fact, in its response to plaintiff's motion to reconsider the original judgment, ASC characterized cases cited by Youngstown turning on estoppel as representative of an attempt "to interject a number of new arguments into the case...." See Defendants' Response to Plaintiff's Motion to Amend Findings of Fact and Conclusions of Law at 11. Therefore, even if the estoppel argument had potential merit, it would not be properly before us. See Walker v. Continental Life & Accident Co., 445 F.2d 1072, 1074 (9th Cir.1971) (orderly disposition of lawsuits requires contentions first be presented to district court so that required findings can be made; appellate court generally will not reverse on a ground not presented below).
 
 
 15
 Having determined that the endorsement is not a release that can be enforced, and that the $173,079.41 Miller Act judgment in Youngstown's favor should be affirmed, we consider Youngstown's claim that the district court erred in rejecting its contractual and quasi-contractual theories of recovery, and the concomitant award of attorney's fees under Arizona law. It is not clear that any implied contract existed between Youngstown and ASC; any such contract, however, was not breached by ASC. Furthermore, there is no ground for restitution to Youngstown from ASC.
 
 
 16
 Youngstown contends an implied contract existed between it and ASC, under which Youngstown furnished the UCC-1 document and promised to fabricate pipe for ASC, in return for ASC's promise to make progress payments by joint check to Youngstown and Propipe. The district court determined there was no implied contract or tacit purchase order agreement, finding no indication that the actions of ASC and Youngstown were intended as a quid pro quo rather than "merely efforts to accommodate each other ... to facilitate each parties' [sic] separate agreement with Propipe." The court also found "ASC's negotiations were confined to Propipe and are expressed in the purchase order between ASC and Propipe."
 
 
 17
 Determining the existence of a contract, like interpreting a contract, is a mixed question of law and fact. We review the district court's legal conclusions de novo and, unless clearly erroneous, accept its factual findings as to what the parties said and did. Interpetrol Bermuda, Ltd. v. Kaiser Aluminum International Corp., 719 F.2d 992, 998 (9th Cir.1984) (citing United States ex rel. Union Building Materials Corp. v. Haas & Haynie Corp., 577 F.2d 568, 572 (9th Cir.1978)).
 
 
 18
 We agree that no express or implied contract existed between Youngstown and ASC for the fabrication of pipe. The formation of a contract requires "a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." Restatement (Second) of Contracts Sec. 17(1) (1981). Additionally, the terms of the alleged contract must be reasonably certain. Id. Sec. 33(1); see Savoca Masonry Co. v. Homes & Son Construction Co., 112 Ariz. 392, 542 P.2d 817, 819 (1975) (requiring "sufficient specification of terms" to permit ascertaining each party's obligations). Here, though the terms regarding the fabrication of pipe are defined by the express purchase orders between ASC and Propipe, Youngstown provided no evidence that ASC negotiated either specifications or price and delivery terms with Youngstown. That Youngstown was in fact aware of the specifications does not create a contractual relation. Cf. Cooley v. Barten & Wood, Inc., 249 F.2d 912, 913-14 (1st Cir.1957) (no contractual relation existed under the Miller Act between materialman and general contractor even though general contractor knew of contract between middleman and subcontractor, and general contractor sent materialman a copy of a letter to subcontractor regarding delivery dates and quality required).
 
 
 19
 It is also not clear that any implied contract existed between ASC and Youngstown concerning the mode of payment. If such contract existed, however, ASC did not act in breach of it. Consequently, we hold that Youngstown could not recover against ASC on an implied contract theory.
 
 
 20
 Finally, we consider Youngstown's argument that ASC, which has been paid in full by the government but which has not paid Youngstown, was unjustly enriched in retaining the pipe Youngstown provided. The district court rejected Youngstown's restitution claim, finding that "[b]y defining their relationships with express contracts, ASC, Propipe and Youngstown have allocated the risk of nonpayment or nonperformance by one of the parties. Restitution may not be used to circumvent this allocation of risks." This is a correct application of Arizona law. Advance Leasing & Crane Co. v. Del E. Webb Corp., 117 Ariz. 451, 573 P.2d 525, 526 (App.1977) (the remedy of restitution is inapplicable where the parties have allocated risks among themselves through explicit contractual agreement); see also Stratton v. Inspiration Consolidated Copper Co., 140 Ariz. 528, 683 P.2d 327, 329-30 (App.1984) (same) (citing Advance Leasing); Restatement of Restitution Sec. 110 (1937) ("A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person.").
 
 
 21
 Advance Leasing involved facts parallel to those at issue here. Webb entered into an agreement with Meyeres under which Meyeres was to supply a crane for Webb's construction project. When it was discovered that the crane provided by Meyeres could not be used, the parties agreed Meyeres could contract with a third party for another crane so long as the cost to Webb remained the same. Meyeres then rented a crane from Advance, which was used on Webb's construction site. Meyeres failed to pay Advance, and Advance sued Webb for unjust enrichment. The Arizona Court of Appeal applied Restatement of Restitution section 110 to deny recovery for unjust enrichment, since Advance had an explicit contractual right of recovery against Meyeres. Similarly, Youngstown has an explicit right of recovery against Propipe, pursuant to the Youngstown-Propipe purchase order. Under the Restatement analysis, Youngstown conferred the benefit on ASC pursuant to the Youngstown-Propipe contract, and the right of recovery arises from the contract only, not from principles of restitution.
 
 
 22
 Youngstown contends that Advance Leasing is distinguishable on the ground that Webb had already paid Meyeres and was thus not unjustly enriched by the benefit received from Advance's crane. See 573 P.2d at 527. The distinction is without merit. As in Advance Leasing, ASC will have given consideration for the pipe when it fully performs on its contract with Propipe; that this performance might not have resulted in full payment to Youngstown is immaterial. Youngstown's only contractual or restitutionary remedy is against Propipe. Recovery against ASC may only be had under the Miller Act.
 
 
 23
 Youngstown is thus entitled to recover the full $173,079.41 awarded to it by the district court, but is not entitled to recover attorney's fees pursuant to Arizona statute.
 
 
 24
 The amended judgment of the district court is AFFIRMED.