545 F.2d 1381
 The UNITED STATES of America for the Use and Benefit of
WOODINGTON ELECTRIC COMPANY, INC., Appellee,
v.
UNITED PACIFIC INSURANCE COMPANY, Appellant.
The UNITED STATES of America for the Use and Benefit of
WOODINGTON ELECTRIC COMPANY, INC., Appellee,
v.
GLOBE ELECTRIC COMPANY, INC., t/a M. L. Marshall Electrical
Contractors, Appellant.
 Nos. 75-2271, 75-2272.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 10, 1976.
Decided Nov. 15, 1976.
 
 E. Kenneth Day, Norfolk, Va. (M. Richard Epps, Day & Summs, Norfolk, Va., on brief), for U. S. for the use and benefit of Woodington Elec. Co., Inc.
 Phillips M. Dowding, Newport News, Va., for United Pac. Ins. Co. and Globe Elec. Co., Inc., t/a M. L. Marshall Electrical Contractors.
 Before BUTZNER and RUSSELL, Circuit Judges, and HOWARD T. MARKEY, Chief Judge, United States Court of Customs and Patent Appeals.
 BUTZNER, Circuit Judge:
 
 
 1
 United Pacific Insurance Co., a surety under the Miller Act, 40 U.S.C. § 270a-d, for Globe Electric Co., a prime contractor on two government construction contracts, appeals a judgment holding it liable to Woodington Electric Co. United Pacific contends that the court erred in finding that Woodington was a subcontractor, rather than a joint venturer, of Globe. It also contends that, regardless of the relationship between Woodington and Globe, the court erred in ruling that it was obligated on its bond for the share of profits that Globe had agreed to pay Woodington. We uphold the judgment of the district court on both issues.
 
 
 2
 * After contracting to do electrical work at Langley Air Force Base, in Hampton, Virginia, Globe realized it did not have sufficient electricians and equipment. Consequently, it asked Woodington to perform the work. Although the agreement which the companies executed stated that they would "work as a team," each assumed specific obligations. Woodington undertook to furnish labor and supervision, and to do the paper work. Globe agreed to render financial assistance, and to supply services and support as needed. It provided nearly all of the materials, and it paid the wages of Woodington's employees on the basis of payrolls submitted by Woodington. The parties initially provided that Woodington would receive all profits, but they amended this to stipulate that Globe would receive a small share if the profits exceeded $20,000.
 
 
 3
 Woodington waived a salary of $300 per week for its principal officer, and supplied miscellaneous materials without charging Globe. A witness for Woodington testified that it did not seek reimbursement for these items because their costs would be recovered as profit. Thus, although the parties referred to the amount due Woodington at the completion of the contract as "profit," this sum actually included out-of-pocket expenses and overhead.
 
 
 4
 The projects have been completed and all bills for labor and materials have been paid. The parties do not now dispute that Woodington's share of the profits is approximately $29,700. The only issue, therefore, is United Pacific's liability as surety.
 
 II
 
 5
 The Miller Act requires a government contractor to furnish a payment bond with surety "for the protection of all persons supplying labor and material." 40 U.S.C. § 270a(a)(2). Both parties concede that this provision protects a subcontractor but not a joint venturer. United States ex rel. Briggs v. Grubb, 358 F.2d 508, 512 (9th Cir. 1966). Consequently, the liability of United Pacific turns on Woodington's relationship to Globe, which, under the Miller Act, must be determined by federal law. F. D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 127, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974).
 
 
 6
 Construing the Miller Act in Clifford F. MacEvoy Co. v. United States ex rel. Calvin Thomkins Co., 322 U.S. 102, 109, 64 S.Ct. 890, 894, 88 L.Ed. 1163 (1944), the Supreme Court defined a subcontractor as "one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract." The relationship between Woodington and Globe conforms to this definition.
 
 
 7
 Two additional elements are necessary to establish that Woodington and Globe were joint venturers. First, both must have had the right to control the performance of the work; and, second, they must have had an express or implied understanding to share losses. United States ex rel. Briggs v. Grubb, 358 F.2d 508 (9th Cir. 1966); St. Paul-Mercury Indemnity Co. v. United States ex rel. Jones, 238 F.2d 917 (10th Cir. 1956); United States ex rel. Altman v. Young Lumber Co., 376 F.Supp. 1290 (D.S.C.1974). Both elements are lacking.
 
 
 8
 The express language of the agreement and the manner in which the job was supervised demonstrate that the parties did not have equal control over the work. Their agreement specifically provided that Woodington would " supervise the performance of both contracts." Woodington's exclusive direction of its own work force indicates that it was a subcontractor, not a joint venturer. Furthermore, Globe's function indicates that it was a prime contractor rather than a joint venturer. Generally, a prime contractor has no control over the work of a subcontractor, other than to see that it follows the contract specifications. Globe's role conforms to this generality, for it had no voice in the day-to-day control over the utilization of labor and equipment.
 
 
 9
 The agreement between Woodington and Globe contains no express provision for sharing the losses. Moreover, the facts negate any implied undertaking on Woodington's part to be responsible for the losses. As shown by the agreement and the manner in which the parties operated, Globe was obliged to pay for all of the labor and for the bulk of the material. In the absence of an express or implied agreement to share losses of the enterprise, the sharing of profits in itself does not create a joint venture that will defeat recovery from the surety under the Miller Act. St. Paul-Mercury Indemnity Co. v. United States ex rel. Jones, 238 F.2d 917, 921 (10th Cir. 1956).
 
 
 10
 We conclude, therefore, that the district court's ruling that Woodington was a subcontractor, not a joint venturer, is warranted by the law and the facts.
 
 III
 
 11
 United Pacific further contends that regardless of the legal relationship between Woodington and Globe, profits realized from the performance of entire government contracts do not constitute payment for labor and materials under the Miller Act. We find no support for this contention.
 
 
 12
 When the parties agree that a subcontractor's compensation shall be contingent on the existence of profits, the surety, of course, is not liable to the subcontractor if the undertaking is unprofitable. United States ex rel. Harrington v. Trione, 97 F.Supp. 522 (D.Colo.1951). But here, the parties acknowledge that Globe's contracts with the government returned a profit. Under these circumstances, Woodington is entitled to recover the "sums justly due." 40 U.S.C. § 270b. This amount must be determined by reference to the subcontract. Cf. Ottinger v. United States ex rel. Brown, 230 F.2d 405, 408 (10th Cir. 1956).
 
 
 13
 A surety is liable for the subcontract price, unless it was fixed by collusion, fraud, or overreaching. Cf. Royal Indemnity Co. v. Woodbury Granite Co., 69 App.D.C. 364, 101 F.2d 689, 691-92 (1938). Consequently, the surety is obligated to pay the compensation to which the parties have agreed, although this amount exceeds the cost of labor, materials, and overhead. Price v. H. L. Coble Construction Co., 317 F.2d 312, 318 (5th Cir. 1963); cf. Hensel Phelps Construction Co. v. United States ex rel. Reynolds Electrical & Engineering Co., 413 F.2d 701, 704 (10th Cir. 1969). These principles establish that United Pacific is not exonerated simply because Globe and Woodington agreed that Woodington's compensation would be measured by a share of the profits rather than a fixed or unit price.
 
 
 14
 The judgment is affirmed.