UNITED STATES FOR THE USE AND BENEFIT OF WALTON TECHNOLOGY, INC.; Walton Technology, Inc., an Illinois corporation, Plaintiffs–Appellants,

v.

WESTSTAR ENGINEERING, INC., a California corporation; Reliance Opinion Insurance Company, a California corporation, Defendants–Appellees.

Nos. 99–35311, 99–35457.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 4, 2001.

Filed May 22, 2002.

Alan B. Bornstein, Jameson Babbitt Stites & Lombard, P.L.L.C., Seattle, WA, for the plaintiffs-appellants.

Robert L. Zajac, Hillyer & Irwin, San Diego, CA, for the defendants-appellees.

Before THOMPSON, TROTT, and PAEZ, Circuit Judges.

Opinion by Judge PAEZ; Partial Concurrence and Partial Dissent by Judge TROTT.

## OPINION

PAEZ, Circuit Judge.

In this case, Plaintiff Walton Technology, Inc. ("Walton"), a subcontractor on a federal construction project, claims that the prime contractor, Defendant Weststar Engineering, Inc. ("Weststar"), failed to pay Walton rental fees for equipment it rented from Walton for use on the project. Walton filed suit against Weststar and its Miller Act surety, Defendant Reliance Insurance Company ("Reliance"), alleging three causes of action. With respect to Weststar, Walton claimed unjust enrichment and conversion based on its alleged entitlement to a pro rata share of Weststar's recovery from its insurance provider

representing rental fees submitted by Weststar as part of a damage claim associated with the rental equipment. Walton also claimed that Reliance and its principal, Weststar, were liable on the Miller Act payment bond.

The district court granted summary judgment in favor of Weststar on the claims for unjust enrichment and conversion, concluding that Walton was not entitled to a share of Weststar's insurance proceeds under either theory. The district court also granted summary judgment in favor of Reliance and Weststar on Walton's Miller Act claim. Because Weststar had not been paid by the government so as to satisfy the subcontract clause providing that Weststar would only be obligated to pay Walton "when and if paid" by the government, the district court concluded that there were no "sums justly due" under the Miller Act. The district court awarded attorney's fees to both Defendants.

Walton appeals the district court's grant of summary judgment in favor of Weststar and Reliance, as well as the award of attorney's fees. We have jurisdiction under 28 U.S.C. § 1291 and affirm the district court's judgment in favor of Weststar on the unjust enrichment and conversion claims. However, we reverse the judgment in favor of Reliance and Weststar on the Miller Act claim. Allowing Defendants to avoid liability under the Miller Act based on the unsatisfied "pay when and if paid" clause in the subcontract between Walton and Weststar would prevent Walton from exercising its Miller Act rights in the absence of a "clear and explicit" waiver of those rights. Because we remand for further proceedings consistent with this opinion against both Defendants, we also vacate the district court's award of attorney's fees to Defendants as premature.

## I. FACTUAL BACKGROUND

Weststar was the prime contractor on a federal project involving the repainting of the Navy Hammerhead Crane # 28 in Bremerton, Washington. In compliance with the Miller Act, 40 U.S.C. § 270a-d, Weststar obtained a payment bond from Reliance guaranteeing payment to all those supplying labor and materials to the project. Weststar subcontracted with Walton to rent a fabric and frame shroud called the "Sail System" to cover the crane as the work proceeded. The agreement between Weststar and Walton was set forth in Weststar Purchase Order 9601–40 and its Agreement Addendum dated March 18, 1996 ("Purchase Order Subcontract").

Although the rental period was originally scheduled to end in September 1996, various delays prevented Weststar from completing the project on schedule. By the end of October 1996, Walton claimed that Weststar was delinquent on rental fees and payments for other services in the amount of $108,000. On November 1, 1996, Walton filed suit in federal court alleging that Weststar had breached the Purchase Order Subcontract by failing to make timely payment. Shortly after, Weststar and Walton entered into settlement negotiations.

While the negotiations were pending, the Sail System was damaged in a series of incidents. In late November 1996, Navy personnel operating a "Hyster" forklift struck and damaged the Sail System. The next day, a severe windstorm caused further damage. One month later, the Sail System incurred even more damage when Bremerton was hit by high winds, heavy rain, and heavy snowfall. Weststar's corporate parent, Amelco, tendered notice of property damage claims to its insurer, St. Paul Fire & Marine Insurance Company

("St. Paul") in December 1996 and early January 1997.

On January 13, 1997, Walton and Weststar executed the Settlement & Agreement Modification to 9601-40, Hammerhead Crane Project (the "Settlement Agreement"). The Settlement Agreement provided for (1) continuation of the rental period for the Sail System under the Purchase Order Subcontract, (2) Weststar's continued use of the Sail System until completion of the project, and (3) the settlement of all existing disputes and lawsuits, including the breach of contract claim filed November 1, 1996. Under the Settlement Agreement, Weststar agreed to pay Walton the sum of $62,000 "in full settlement of all disputes and lawsuits between[Weststar and Walton] existing at the time of the execution of [the] agreement and in full payment of the monthly rental for the framing system through January 31, 1997." The Settlement Agreement also provided the terms under which Weststar would be obligated to make future payments to Walton. Future payment of rental fees would be subject to the following provision:

> [I]t is expressly agreed that any further payment to Walton for the framing and fabric rental *shall only be made when and if paid by the Navy* and only to the extent paid by the Navy (i.e. Walton Technology will be paid its pro rata share of any recovery upon receipt by Weststar, based on the ratio between Weststar's overall claim amount and the recovered amount, as applied to Walton's claim). (emphasis added).

The parties affirmed their continuing rights and obligations under the Purchase Order Subcontract, except as modified by the Settlement Agreement. The parties also agreed that if any legal action, arbitration or other proceeding became necessary to enforce the terms of the Settlement Agreement, the prevailing party would be entitled to recover attorney's fees and costs incurred in such action or proceeding.

In March 1997, Weststar requested invoices from Walton covering the months of January through April of 1997. Walton prepared the invoices, all dated March 26, 1997, and submitted them together. Walton also sent an invoice for May 1997, dated June 16, 1997. Walton continued to furnish the Sail System for Weststar's use through the end of 1997.

Weststar included the invoices provided by Walton in its property damage claim to St. Paul. In August 1997, St. Paul and Weststar settled the property damage claims. St. Paul reimbursed Weststar in full for the sums Weststar claimed it owed Walton Technology for equipment rentals, materials, and technical support, plus overhead and profit markups. Weststar paid Walton for rental fees for January 1997, materials, and technical services. Although Weststar continued to use the Sail System until December 27, 1997, it made no further rental payments to Walton for the rental periods after January 1997. Weststar disassembled the Sail System and shipped it back to Walton on January 28 and February 6, 1998.

On April 3, 1998, Walton filed the instant action against Weststar and its Miller Act surety, Reliance. Walton claims unjust enrichment and conversion against Weststar based on Walton's alleged entitlement to a pro rata portion of Weststar's insurance recovery for rental fees included in the invoices prepared by Walton and submitted by Weststar as part of its property damage claim. Walton also claims that Reliance is liable on the Miller Act payment bond for unpaid rental fees through December 27, 1997. The parties filed cross motions for summary judgment. The district court granted Defendants' motion, denied Plaintiff's motion, and dis-

missed the action. The district court then granted Defendants' Motion for Attorney's Fees in the amount of $26,588.26. These timely appeals followed.

## II. STANDARD OF REVIEW

■ We review de novo a district court's summary judgment. *Nodine v. Shiley Inc.*, 240 F.3d 1149, 1152 (9th Cir. 2001). "Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c)." *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir.1999). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Nodine*, 240 F.3d at 1152.

## III. DISCUSSION

A. Walton's Claims Against Weststar

1. Walton's Unjust Enrichment Claim Against Weststar

■ Walton argues that it is entitled to recover a pro rata portion of Weststar's recovery on an insurance claim submitted to its insurer, St Paul, representing amounts included in Walton's rental invoices for the months of February through May 1997 that were submitted by Weststar as part of its claim. Walton maintains that it has satisfied the three elements of an unjust enrichment claim: a benefit conferred by Walton upon Weststar; an appreciation or knowledge by Weststar of the benefit; and the acceptance or retention by Weststar of the benefit under such circumstances as to make it inequitable for Weststar to retain the benefit. *Bailie Comm., Ltd. v. Trend Bus. Sys., Inc.*, 61 Wash.App. 151, 810 P.2d 12, 18 (1991). Under Washington law, however, "[a] party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action

on an implied contract relating to the same matter, in contravention of the express contract." *Chandler v. Wash. Toll Bridge Auth.*, 17 Wash.2d 591, 137 P.2d 97, 103 (1943). Having affirmed the validity of the Purchase Order Subcontract and the Settlement Agreement, Walton cannot proceed against Weststar by way of unjust enrichment. Walton's claim, if any, must be for breach or enforcement of one or both of these agreements. We, therefore, affirm the district court's judgment for Weststar on the unjust enrichment claim.

2. Walton's Conversion Claim Against Weststar

■ Walton also argues that it is entitled to reimbursement based on conversion due to Weststar's "unjustified, willful interference with a chattel which deprives a person entitled to the property of possession." Weststar notes that although money can, in some instances, be the subject of conversion, Walton did not satisfy its burden of showing that it had an "ownership" right in the insurance proceeds that Weststar received from St. Paul. Weststar, not Walton, paid the premiums for its property insurance coverage. Walton's contention that Weststar's insurance recovery was based on losses that Weststar did not incur may form the basis of an action by St. Paul for insurance fraud, but Walton cannot assert this claim. Accordingly, the district court properly granted Weststar's motion for summary judgment on this claim.

B. Walton's Miller Act Claim

Defendants contend that they are not liable to Walton under the Miller Act because the "pay when and if paid" clause contained in the Settlement Agreement has not been satisfied. We conclude, however, that to permit a Miller Act surety and its principal to avoid liability on this basis would prevent a subcontractor from

exercising its Miller Act rights in the absence of a "clear and explicit" waiver of those rights. Therefore, we reverse the district court's grant of summary judgment in favor of Reliance and its principal, Weststar.

### 1. The Miller Act

The Miller Act requires a general contractor on a federal construction project to furnish a payment bond "for the protection of all persons supplying labor and material in the prosecution of work provided for in [the] contract." 40 U.S.C. § 270a(a)(2). The Act "represents a congressional effort to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings." *Mai Steel Serv. Inc. v. Blake Constr. Co.*, 981 F.2d 414, 416–17 (9th Cir.1992) (quoting *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 216, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957)). Because the Miller Act is "highly remedial in nature ... [i]t is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." *Sherman*, 353 U.S. at 216, 77 S.Ct. 793(citing *Fleisher Engineering Co. v. United States ex rel. Hallenbeck*, 311 U.S. 15, 17, 61 S.Ct. 81, 85 L.Ed. 12 (1940)).

The Act creates a cause of action in favor of "[e]very person who has furnished labor or material in the prosecution of the work provided for in [the] contract." 40 U.S.C. § 270b(a). Under the Act, such persons "who[have] not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made shall have the right to sue on [the] payment bond ... for the sum or sums justly due

him." *Id.* However, "no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied." *Id.* Thus, by the express terms of the Miller Act a subcontractor's right of recovery on a Miller Act payment bond is conditioned on the passage of time from completion of work or provision of materials.

There is no dispute that Walton, in its capacity as a subcontractor, is a "person" entitled to bring a claim against Reliance on the Miller Act payment bond. *Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co.*, 322 U.S. 102, 107–08, 64 S.Ct. 890, 88 L.Ed. 1163 (1944) (interpreting "person" to include "subcontractors who deal directly with the prime contractor," as well as any subcontractor who has supplied labor or materials to a subcontractor). Nor do the parties dispute that Walton has not been paid for rental fees within ninety days of completing its obligations under the Purchase Order Contract as modified by the Settlement Agreement. Rather, the dispute here centers on whether Reliance can assert the unsatisfied "pay when and if paid" clause contained in the Settlement Agreement as a defense to liability on the Miller Act payment bond. We conclude that it cannot.

### 2. Reliance's Liability to Walton Under the Miller Act

Defendants contend that because the "pay when and if paid" clause in the Settlement Agreement has not been satisfied, due to the fact that Weststar has not been paid by the Navy, there are no "sums justly due" for which Walton is entitled to recover under the Miller Act. According to Defendants, allowing a Miller Act surety and its principal to avoid liability on this basis is required by the general rule of suretyship law stating that a sure-

ty's liability is coextensive with that of its principal. Although general rules of suretyship law apply to Miller Act cases, *Am. Cas. Co. of Reading v. Arrow Road Construction Co.*, 309 F.2d 923, 924 (9th Cir. 1962), Defendants assume that coextensive liability between a surety and its principal is in every case defined and limited by the principal's contractual liability. In the context of Miller Act cases, however, we must look beyond the principal's contractual liability, to the Miller Act itself, in defining the limits of coextensive liability between a surety and its principal.

"The Miller Act provides a federal cause of action, and the scope of the remedy as well as the substance of the rights created thereby is a matter of federal, not state law." *F.D. Rich Co., Inc. v. United States ex rel. Indust. Lumber Co., Inc.*, 417 U.S. 116, 127, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). In contrast to a surety who provides a payment bond on a private construction project or pursuant to a "little Miller Act" under state law, the liability of a Miller Act surety is controlled by federal law because "determination of the extent of the liability involves the construction of a federal statute, the Miller Act, under which it was created." *Cont'l Cas. Co. v. Schaefer*, 173 F.2d 5, 8(9th Cir.1949); *accord Sherman*, 353 U.S. at 216, 77 S.Ct. 793. It is clear that "the surety's liability on a Miller Act bond must be at least coextensive with the obligations imposed by the Act if the bond is to have

its intended effect." *Sherman*, 353 U.S. at 215–16, 77 S.Ct. 793. Thus, the liability of a surety and its principal on a Miller Act payment bond is coextensive with the contractual liability of the principal only to the extent that it is consistent with the rights and obligations created under the Miller Act.

This principle is illustrated by our decision in *Mai Steel Service, Inc. v. Blake Construction Co.*, 981 F.2d 414(9th Cir. 1992). In *Mai Steel*, the subcontractor appealed a judgment holding that a Miller Act surety was not liable for labor and material costs caused by construction delays. We reversed the district court, holding that "the subcontractor's ability to recover did not hinge either on the cause of the delay or the terms of the underlying contract." *Id.* at 417(citing *United States ex rel. T.M.S. Mech. Contractors v. Millers Mut. Fire Ins. Co. of Texas*, 942 F.2d 946, 951 (5th Cir.1991)). Rather, we held that the surety's liability "depended entirely on whether the claim fell within 'the language of[the Miller 7549 Act], interpreted in light of its protective purpose.'" *Id.* (quoting *T.M.S. Mech. Contractors*, 942 F.2d at 951).[1]

Defendants contend that the validity of their asserted defense to liability is controlled by *United States ex rel. Woodington Electric Co. v. United Pacific Insurance*, 545 F.2d 1381 (4th Cir.1976). In *Woodington Electric*, the Fourth Circuit held that the "amount [of the 'sums justly

---

**1.** We are not the only circuit to follow this approach in Miller Act cases. *See, e.g., United States ex rel. T.M.S. Mech. Contractors*, 942 F.2d 946, 953 (5th Cir.1991) (holding that lost profits are not recoverable under the terms of the Miller Act); *United States ex rel. Gibson v. Harman*, 192 F.2d 999, 1001 (4th Cir.1951) (holding that injuries suffered by laborers are not recoverable under the terms of the Miller Act); *United States ex rel. Benkart Co. v. John A. Johnson & Sons Inc.*, 236 F.2d 864, 865 (3d Cir.1956) (holding that freight and transporta-

tion charges are not recoverable under the terms of the Miller Act); *United States ex rel. Sunbelt Pipe Corp. v. U.S. Fidelity and Guar. Co.*, 785 F.2d 468, 470–71 (4th Cir.1986) (holding that the cost of capital equipment is not recoverable under the terms of the Miller Act); *Brogan v. Nat'l Surety Co.*, 246 U.S. 257, 263, 38 S.Ct. 250, 62 L.Ed. 703 (1918) (holding—under the predecessor statute to the Miller Act—that the cost of food, clothing, and lodging for laborers is recoverable under the terms of the Miller Act).

due'] must be determined by reference to the subcontract." *Id.* at 1383. Defendants, therefore, argue that because Weststar is not liable on the underlying contract due to the unsatisfied "pay when and if paid" clause, there are no "sums justly due" under the Miller Act. However, because cases such as *Woodington Electric* effect only the *measure of recovery* in Miller Act cases, as opposed to the *timing of recovery* under the Miller Act, these cases are inapposite.

In *Woodington Electric*, the subcontract included a clause providing that the subcontractor would be compensated for its work from the profits, if any, realized on the project. *Id.* at 1382. The surety appealed a judgment holding it liable for a share of the profits, arguing that profits are not recoverable under the Miller Act because "sums justly due" may only include payment for labor and materials. *Id.* at 1383. As noted above, the Fourth Circuit looked to the subcontract to determine the "amount" of the "sums justly due." *Id.* Affirming the lower court's judgment, the Fourth Circuit held that the Miller Act surety "[was] not exonerated simply because [the parties to the subcontract] agreed that [the subcontractor's] *compensation* would be *measured* by a share of the profits rather than a fixed or unit price." *Id.* at 1384 (emphasis added). Thus, the Fourth Circuit looked to the underlying contract, not to analyze the contractual liability of the principal, but to determine whether "sums justly due" could be measured in terms of profits as opposed to the cost of labor and materials.

The Ninth Circuit also looks to the underlying contract in determining the measure of "sums justly due" under the Miller Act. In *Taylor Construction, Inc. v. ABT Service Corp.*, 163 F.3d 1119 (9th Cir. 1998), the subcontract contained a savings clause reflecting the parties' agreement that, in addition to the costs of labor and materials, the subcontractor would receive one half of any savings realized on the project. *Id.* at 1120–21. After the prime contractor failed to pay the subcontractor, the subcontractor sued the Miller Act surety on the payment bond. The district court held that the surety was liable to the subcontractor for the amount owed under the savings clause. On appeal, the surety argued that savings were not recoverable under the Miller Act because "sums justly due" could only be measured in terms of the costs of labor and material. *Id.* at 1121. We held that "the Ninth Circuit has consistently ... used the underlying bonded subcontract as the *measure of recovery* in Miller Act cases." *Id.* at 1122 (emphasis added). Thus, we rejected the surety's argument, concluding that the subcontractor could recover "the agreed upon amount...." *Id.* at 1123.

Defendants argue that there is no meaningful distinction between the present case and cases such as *Woodington Electric* and *Taylor Construction*. We disagree. Considerable differences exist between a case in which the *measure of recovery* in a Miller Act case is determined by reference to subcontract terms governing how work performed under the subcontract will be compensated and one in which the timing of recovery, and, in some cases, the right of recovery under the Miller Act is dictated by such terms. Where subcontract terms effect the timing of recovery or the right of recovery under the Miller Act, enforcement of such terms to preclude Miller Act liability contradict the express terms of the Miller Act.[2]

**2.** Dismissing this defense to liability in a Miller Act case, the Fifth Circuit emphasized that the Miller Act conditions the right of recovery on the passage of time, not payment by the government. *See T.M.S. Mech.*, 942 F.2d at 949 n. 6 (holding that a "pay-when-paid" clause does not preclude a subcontractor's

■ A subcontractor's right of recovery on a Miller Act payment bond accrues ninety days after the subcontractor has completed its work, not "when and if" the prime contractor is paid by the government. Permitting a Miller Act surety to avoid liability on the payment bond based on an unsatisfied "pay when and if paid" clause in the subcontract would, for all practical purposes, prohibit a subcontractor from exercising its Miller Act rights until the prime contractor has been paid by the government. In cases where the government does not pay the prime contractor within the one year statute of limitations period, the subcontractor would be barred from asserting its Miller Act rights.

Walton has performed its obligations under the subcontract and waited the requisite ninety days. Permitting Defendants to avoid liability on the Miller Act payment bond based on the unsatisfied "pay if and when paid" clause in the Subcontract Agreement would prevent Walton from exercising its rights in accordance with the express terms of the Miller Act. It would, in effect, transform Walton's agreement concerning Weststar's contractual obligations into an implied waiver of Walton's rights under the Miller Act. Thus, the validity of Defendants' defense depends on

whether the "pay when and if paid" clause constitutes a valid waiver of Walton's Miller Act rights. We conclude that it does not.

In *Youngstown Welding & Engineering v. Travelers Indemnity Co.*, 802 F.2d 1164 (9th Cir.1986), we held that "federal courts have been uniform in their insistence that a waiver be clear and explicit."[3] *Id.* at 1166. Applying this standard, we held that the following release printed on the back of checks made payable jointly to a subcontractor and its supplier was sufficient to affect a "clear and explicit" waiver of the supplier's Miller Act rights:

ENDORSEMENT OF THIS CHECK BY YOUNGSTOWN WELD ACKNOWLEDGES RECEIPT OF PAYMENT IN FULL FOR ALL OF THE MATERIAL AND/OR LABOR SAID PAYEE HAS PROVIDED UNDER AGREEMENT WITH PROPIPE CORPORATION FOR YUMA DESALTING PLANT UP TO AND INCLUDING THE DATE OF THIS CHECK; RELEASING ANY LIEN, STOP NOTICE, *OR BOND RIGHTS* SAID PAYEE MIGHT HAVE, REGARDLESS OF THE AMOUNT OF MONEY ACTUALLY RETAINED BY SAID PAY-

---

recovery under the Miller Act payment bond because "[t]he federal legislation conditions payment of the subcontractor not on payment by the government to the contractor, but rather on the passage of time from completion of the work or provision of materials").

3. Congress has recently expressed a similar intent to protect the rights of subcontractors under the Miller Act by setting forth the requirements for a valid waiver. The Construction Industry Payment Protection Act of 1999, PL 106-49 (HR 1219), *codified at* 40 U.S.C. § 270b, amended the Miller Act to include a provision specifying the requirements for a valid waiver of Miller Act rights. The amendment, codified at 40 U.S.C. 270b(c), provides:

(c) Any waiver of the right to sue on the payment bond required by section 270a to

270d of this title shall be void unless it is in writing, signed by the person whose right is waived, and executed after such person has first furnished labor or material for use in the performance of the contract.

Section (c) illustrates a dual intent on the part of Congress with respect to a subcontractor's Miller Act rights. First, it is clear that Congress intended that any waiver of those rights be controlled by a uniform federal standard. Second, in an effort "to protect [ ] the rights of subcontractors throughout the bidding process and beyond," Congress required that any such waiver be both voluntary and knowing. 145 Cong.Rec. H6776-02 (August 2, 1999) (statement of the bill's sponsor, Congresswoman Maloney of New York).

EE OUT OF THE PROCEEDS OF THIS CHECK.

*Id.* at 1165–66 (emphasis added). We concluded that the above release "dispell[ed] any doubt regarding either the amount purported to be released or by whom the release was executed." *Id.* at 1167.

As noted above, the "pay when and if paid" clause is part of a settlement agreement between Weststar and Walton under which the parties agreed to settle all existing disputes and lawsuits and continue their existing contractual relationship, except as modified by the terms of the Settlement Agreement. The "pay when and if paid" clause in the Settlement Agreement does not identify any rights that Walton may have under the Miller Act payment bond—or any other bond for that matter—as a predicate for releasing them. Indeed, it is not even framed as a release or waiver of claims. Thus, Walton's agreement to accept payment directly from Weststar for work performed under the subcontract "when and if paid" by the Navy does not constitute a "clear and explicit" waiver of its Miller Act rights.

Although the district court was correct in stating that "there is nothing about the Miller Act that forecloses the parties from restructuring the subcontract governing their relationship when, in adversity, they seek to cut their respective losses," the Miller Act does not permit such "restructuring" to preclude a subcontractor from exercising its rights in accordance with the express terms of the Act in the absence of a "clear and explicit" waiver of those rights. A subcontractor that has performed as agreed need not await the Government's payment of the contractor before initiating an action under the Miller Act against the contractor *or* the surety. Once the requisite ninety-day period has elapsed, the Miller Act permits a subcontractor to seek payment against the payment bond. We, therefore, reverse the district court's judgment in favor of Reliance and its principal, Weststar, on Walton's Miller Act claim and remand for further proceedings consistent with this opinion. Because we remand for further proceedings against both Defendants, we also vacate the district court's award of attorney's fees to Defendants as premature.

AFFIRMED in part, REVERSED in part, VACATED in part, and REMANDED.

TROTT, Circuit Judge (Concurring and Dissenting).

This case stands for the peculiar proposition that a Miller Act surety is liable to a subcontractor on a Miller Act payment bond even though the bonded principal owes nothing to that subcontractor. Although Judge Paez makes a good case for this result, the holding here appears to stand the general rule of suretyship law on its head. It is a cardinal rule of the surety/principal relationship that a surety occupies the shoes of its principal and "may avail himself of any defense" available to the principal other than those that are purely personal, such as bankruptcy or infancy. 72 C.J.S. *Principal and Surety* § 189 at 318–19 (1987). The Fourth Circuit dealt with an issue similar to the one we decide here and said,

> When the parties agree that a subcontractor's compensation shall be contingent on the existence of profits, the surety, of course, is not liable to the subcontractor if the undertaking is unprofitable.

*United States ex rel. Woodington Elec. Co. v. United Pac. Ins. Co.,* 545 F.2d 1381, 1383 (4th Cir.1976). In the main, if the principal is not liable to a subcontractor, the surety isn't either. This concept is the very essence of suretyship. As Black's Law Dictionary explains, a surety is "[o]ne who undertakes to pay money or to do any

other act in event that his principal fails therein.... His liability is contingent on the default of his principal." Black's Law Dictionary 1441 (6th ed.1990). I believe my colleagues may have unintentionally confused a surety with a guarantor, which Reliance is not.

Here, it is as clear as the difference between chalk and cheese that Weststar is not liable to Walton for the disputed sum. Why? Because Walton expressly agreed for good and sufficient consideration—$62,000—in a written and signed settlement and release agreement that "any further payment to Walton for the framing and fabric rental shall only be made when and if paid by the Navy and only to the extent paid by the Navy." Thus, we are not faced so much with a waiver of Miller Act rights as we are with a simple question of what the surety must stand behind. As to the explicit condition precedent, the Navy did not pay, period. Therefore, Weststar, the principal, is off the hook to Walton and so is Reliance, the surety.

As to the issue of waiver, the settlement agreement is also informative. It says,

> The parties, and each of them, *expressly waive* any benefit, *statutory or otherwise*, which would prevent a general release from extending to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which, if known by him would have materially affected his decision to enter into the settlement and to execute the release.

This language makes the settlement and release utterly final as to Weststar's liability.

If Walton had wanted it otherwise, it should not have signed the settlement agreement and accepted the $62,000, or, in the alternative, it should have covered itself with respect to the surety Reliance. I conclude, therefore, that the district court's understanding of this relationship was correct; and I therefore respectfully dissent from this aspect of the majority's decision. As to the other issues, I concur in Judge Paez's excellent opinion.